**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 25-2932(L), 25-2933(Con)

Caption [use short title]

Natural Resources Defense Council, Inc. et al.

v.

New Jersey Department of Environmental Protection, et. al.

**Motion for:** Motion to Transfer Petitions for Review

Set forth below precise, complete statement of relief sought:

Respondent, Transcontinental Gas Pipe Line Company, LLC, respectfully seeks transfer of the Petitions pursuant to 28 USCS § 1631 since the Third Circuit Court of Appeals has original and exclusive jurisdiction to review permits issued by Respondent, the New Jersey Department of Environmental Protection pursuant to the Natural Gas Act, 15 U.S.C. §717r(d)(1).

**MOVING PARTY:** Transcontinental Gas Pipe Line Company, LLC

**OPPOSING PARTY:** Natural Resources Defense Council, Inc.

☐ Plaintiff ☐ Defendant

☐ Appellant/Petitioner ☒ Appellee/Respondent

**MOVING ATTORNEY:** Christine A. Roy

**OPPOSING ATTORNEY:** Jared E. Knicley, Natural Resources Defense Council

[name of attorney, with firm, address, phone number and e-mail]

Rutter & Roy LLP
2052 Route 35, Suite 103, Wall Township, NJ 07719
732-462-1990 - CRoy@rutterroy.com

1152 15th Street NW, Suite 300, Washington DC 20005. 202-513-6242 JKnicley@nrdc.org
and Kaitlin Morrison, Eastern Environmental Law Center, One Gateway Center
Suite 2600, Newark, NJ 07102, 973-424-1461, kmorrison@easternenvironmental.org

Court- Judge/ Agency appealed from: New Jersey Department of Environmental Protection

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes ☐ No (explain):

Opposing counsel's position on motion:
☐ Unopposed ☒ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:
☒ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No

Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency:

Is the oral argument on motion requested? ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☒ No If yes, enter date:

**Signature of Moving Attorney:** [signature] **Date:** 12-3-25 Service : ☒ Electronic ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
**CASE NOS. 25-2932(L), 25-2933(Con)**

NATURAL RESOURCES DEFENSE COUNCIL, INC., et.al.,

Petitioners,

v.

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION and SHAWN M. LATOURETTE, in his official capacity as Commissioner of the New Jersey Department of Environmental Protection; TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, a limited liability company of the State of Delaware,

Respondents.

MOTION OF RESPONDENT, TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC TO TRANSFER PETITIONS FOR REVIEW TO THE THIRD CIRCUIT COURT OF APPEALS

Christine A. Roy
Richard G. Scott
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

**CASE NOS. 25-2932(L), 25-2933 (Con)**

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et.al.,<br><br>Petitioners,<br>v.<br><br>NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION and SHAWN M. LATOURETTE, in his official capacity as Commissioner of the New Jersey Department of Environmental Protection; TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, a limited liability company of the State of Delaware,<br><br>Respondents. | **CORPORATE DISCLOSURE STATEMENT OF RESPONDENT** |

Transcontinental Gas Pipe Line Company, LLC, a non-governmental respondent, by its attorneys, Rutter & Roy, LLP, hereby declares as follows pursuant to Federal Rules of Appellate Procedure, Rule 26.1:

1. Williams Partners Operating LLC owns 100% of Transcontinental Gas Pipe Line Company, LLC.
2. The Williams Companies, Inc. owns 100% of Williams Partners Operating LLC.

3. No other publicly held corporation holds 10% or more of the stock of Transcontinental Gas Pipe Line Company, LLC.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*

CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES ……………………………………………….. | ii |
| INTRODUCTION…………………………………….……………… | 1 |
| BACKGROUND.…………………………………………………... | 2 |
| ARGUMENT………………………………………………………….. | 3 |
| I. UNDER THE NATURAL GAS ACT, THE THIRD CIRCUIT COURT OF APPEALS HAS ORIGINAL AND EXCLUSIVE JURISDICTION OVER THE PETITIONS FOR REVIEW …. | 3 |
| II. THE INTEREST OF JUSTICE REQUIRES THE TRANSFER OF THESE APPEALS TO THE THIRD CIRCUIT UNDER 28 U.S.C. § 1631…………………….....……………………….. | 7 |
| CONCLUSION…………………………………………………….... | 8 |

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.*,
833 F.3d 360, 370-71 (3d Cir. 2016)………………………………….. 4, 5

*Franchi v. Manbeck*,
947 F.2d 631, 634 (2d Cir. 1991)…………………………………... 7

*Liriano v. United States*,
95 F.3d 119, 122 (2d Cir. 1996)………………………………………. 7

*Paul v. INS*,
348 F.3d 43, 46 (2d Cir. 2003)……………………………………... 7

*Ruiz v. Mukasey*,
552 F.3d 269, 276 (2d Cir. 2009)…………………………………... 7, 8

*Saks v. Franklin Covey Co.*,
316 F.3d 337, 345 (2d Cir. 2003)………………………………….. 4

*Twp. of Bordentown v. FERC*,
903 F.3d 234, 246 (3d Cir. 2018)…………………………………... 5

*United States v. Dauray*,
215 F.3d 257, 260 (2d Cir. 2000))………………………………… 4

**Federal Statutes**

15 U.S.C. § 717 et seq……………………………………………….. 2

15 U.S.C. § 717f(c)..…………………………………………………… 3

15 U.S.C. § 717r(b) 6

15 U.S.C. § 717r(d)(1)……………………………………...……….. 1, 2, 3, 4, 5, 6

28 U.S.C. § 41 5

28 U.S.C. § 1294 5

28 U.S.C. § 1631 1, 7, 8

**Court and Other Rules**

L.R.A.P. 27.1(b) 1

## INTRODUCTION

Respondent, Transcontinental Gas Pipe Line Company, LLC ("Transco"), respectfully requests that these consolidated Petitions for Review ("Petitions") be transferred to the Third Circuit Court of Appeals pursuant to 28 USCS § 1631 as this court does not have jurisdiction over these appeals. The subject of the Petitions is the Water Quality Certification pursuant to Section 401 of the federal Clean Water Act ("401 WQC") and other federally delegated and state permits (collectively, the "Permit") issued by the New Jersey Department of Environmental Protection ("NJDEP") which authorize the construction of facilities located in New Jersey (only) that are part of Transco's Northeast Supply Enhancement Project ("Project"). The Third Circuit has previously and consistently asserted original and exclusive jurisdiction, pursuant to 15 U.S.C. § 717r(d)(1) of the Natural Gas Act ("Section 717r(d)(1)"), to review NJDEP permits issued for Section 717f facilities that are located in New Jersey.

Given the plain language of Section 717r(d)(1), the Third Circuit's previous holdings that it has jurisdiction over the review of NJDEP permits issued pursuant to federal law, and in the interest of justice, Transco respectfully requests that the Petitions be transferred to the Third Circuit Court of Appeals. In support of this Motion, Transco submits the Declaration of Stephen Kellogg, ("Kellogg Decl."), Project Manager.

In compliance with Local Rule 27.1(b), counsel for Transco notified counsel

for Petitioners, Natural Resources Defense Council, Inc., NY/NJ Baykeeper, Princeton Manor Homeowners Association, Central Jersey Safe Energy Coalition, Food & Water Watch, New Jersey League of Conservation Voters Education Fund, and Sierra Club (collectively "Petitioners"), and counsel for Respondent, NJDEP, of the motion. Counsel for Petitioners have advised that their clients oppose the motion and intend to file a response. Counsel for NJDEP has advised that their client does not oppose the motion.

The Court consolidated these appeals and issued an Order on November 19, 2025 that these consolidated appeals be heard in tandem with the appeal of the permit issued by the New York State Department of Environmental Conservation. On November 24, 2025, Transco filed Motions to Intervene in the appeals of the NJDEP Permit as well as in the appeal of the permit issued by the New York State Department of Environmental Conservation. On December 1, 2025, this Court granted Transco's motions to intervene.

## BACKGROUND

Petitioners, pursuant to Section 717r(d)(1) of the Natural Gas Act, seek review of the Permit issued to Transco by NJDEP. Transco, a natural gas company within the meaning of the Natural Gas Act, 15 U.S.C. § 717 et seq. ("Natural Gas Act"), owns and operates an interstate natural gas transmission system which extends through the Southern and Atlantic Seaboard regions, terminating in the metropolitan New York City area. Kellogg Decl. ¶ 4. On May 3, 2019, Federal Energy

Regulatory Commission ("FERC") issued, in its Docket No. CP17-101-000, a Certificate of Public Convenience and Necessity ("Certificate Order") pursuant to the Natural Gas Act, 15 U.S.C. §717f(c), authorizing Transco to construct, operate, and maintain the Project. Kellogg Decl. ¶ 7. In New Jersey, the Project includes the construction of a new compressor station in Somerset County and two new pipeline segments that will loop (will run generally parallel and connect at both ends to) Transco's existing pipeline system, including a pipeline segment in Middlesex County, New Jersey (the "Madison Loop"), and a segment that will run from Middlesex County, New Jersey, to Transco's Rockaway Transfer Point in New York State waters (the "Raritan Bay Loop"). Kellogg Decl. ¶ 8.

The Permit relates only to Transco's facilities in New Jersey. The Permit does not authorize the construction of any Project facilities outside of New Jersey. Kellogg Decl. ¶ 19.

## ARGUMENT

### I. UNDER THE NATURAL GAS ACT, THE THIRD CIRCUIT COURT OF APPEALS HAS ORIGINAL AND EXCLUSIVE JURISDICTION OVER THE PETITIONS FOR REVIEW.

At issue here is the interpretation of Section 717r(d)(1) of the Natural Gas Act, which provides:

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction

> over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law… [Emphasis added.]

The court's "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). "[P]lain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003).

There is no ambiguity here. Section 717r(d)(1) vests original and exclusive jurisdiction in the United States Court of Appeals for the circuit in which the facilities are proposed to be constructed, expanded or operated. Since the facilities, which are the subject of the Permit, are in New Jersey, the Third Circuit has original and exclusive jurisdiction over the review of the Permit.

The Third Circuit addressed the requirements of 15 U.S.C. § 717r(d)(1) in *Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.*, 833 F.3d 360, 370-71 (3d Cir. 2016), which involved challenges to permits issued by NJDEP and the Pennsylvania Department of Environmental Protection for Transco's Leidy Southeast Expansion Project. The Third Circuit interpreted 15 U.S.C. § 717r(d)(1) as giving the Courts of Appeals "jurisdiction to review actions undertaken (1) by a State administrative agency; (2) pursuant to federal law; (3) to issue, condition, or

deny a permit, license, concurrence, or approval; (4) required for an interstate natural gas facility permitted under the Natural Gas Act; (5) that is located in the jurisdiction of the circuit Court of review." *Id*. Here, there is no dispute that NJDEP is a state administrative agency that acted pursuant to federal law to issue the Permit, and that the Permit was required for Transco's Project, which was approved by FERC under Section 717f of the Natural Gas Act. There is also no dispute that the Permit relates to only facilities within New Jersey, which is within the Third Circuit. *See* 28 U.S.C. § 41; *see also* 28 U.S.C. § 1294. Thus, the Third Circuit Court of Appeals has original and exclusive jurisdiction over the Petitions.

Notably, the Permit currently being appealed includes nearly identical permits and approvals over which the Third Circuit previously held that it has jurisdiction to review pursuant to 15 U.S.C. § 717r(d)(1). Specifically, in *Del. Riverkeeper Network*, 833 F.3d 372-73 the Third Circuit held that "[g]iven that the Natural Gas Act provides this Court with jurisdiction to review state authorizations issued pursuant to the Clean Water Act, this Court has jurisdiction over the Freshwater Wetlands Individual Permits and the Water Quality Certifications" in connection with Transco's Leidy Southeast Expansion Project. In that case, the Third Circuit also held that it had jurisdiction under 15 U.S.C. § 717r(d)(1) to review the issuance of the Flood Hazard Area Control Act Individual Permits. *Id*. *See also Twp. of Bordentown v. FERC*, 903 F.3d 234, 246 (3d Cir. 2018)(holding that it has jurisdiction under 15 U.S.C. § 717r(d)(1) to review permits and orders of NJDEP

related to Transco's Garden State Expansion Project).

Based on the plain language of Section 717r(d)(1), Congress intended to narrowly confer jurisdiction on the circuit court where the facilities subject to the permit are located. Congress could have taken a broader approach by conferring jurisdiction on any circuit court in which the project is located, as it did for the review of FERC orders, but it did not do so when it amended the Natural Gas Act. By way of example, Section 717r(b) of the Natural Gas Act provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the [FERC] in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia." 15 U.S.C. § 717r(b) Thus, Congress intended for <u>one</u> Court of Appeals to have jurisdiction over appeals of actions by state administrative agencies acting pursuant to federal law, and that the appropriate Court of Appeals is based on the location of the facility that is the subject of the permit.

Here, Transco's facilities that are the subject of the Permit are located in New Jersey, and the Permit does not authorize construction of facilities outside of New Jersey. Kellogg Decl. ¶¶ 18-19. For these reasons, this court lacks jurisdiction under 15 U.S.C. § 717r(d)(1) to hear these appeals.

## II. THE INTEREST OF JUSTICE REQUIRES THE TRANSFER OF THESE APPEALS TO THE THIRD CIRCUIT UNDER 28 U.S.C. § 1631

Under 28 U.S.C. § 1631, where a court has no jurisdiction over an action, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631. A court is required to transfer a case to another court when: (1) the court lacks jurisdiction over the case; (2) the transferee court would have possessed jurisdiction over the case at the time it was filed; and (3) a transfer would be in the interest of justice. *Paul v. INS*, 348 F.3d 43, 46 (2d Cir. 2003) (holding that a transfer is mandatory when all conditions are met). All three conditions are satisfied here and, therefore, these appeals should be transferred to the Third Circuit under 28 U.S.C. § 1631.

For the reasons stated herein above, the first two requirements of 28 U.S.C. § 1631 are satisfied. The third requirement imposed by Section 1631 (i.e., that any transfer be "in the interest of justice") is also satisfied. In determining whether a transfer is in the interest of justice, the equities of dismissing a claim when it could be transferred should be carefully weighed. *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996) (citing *Franchi v. Manbeck*, 947 F.2d 631, 634 (2d Cir. 1991)). The Second Circuit weighs factors such as whether the statute of limitations would bar the plaintiff from refiling the action in the proper court and whether the claims were filed in bad faith. *See Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009).

However, even in cases such as this one, where the statute of limitations would not bar the Petitioners from refiling the action in the proper court, a transfer, rather than dismissal, may be in the interest of justice because it would save the time, expense and effort of refiling the action. *Id*. ("[A]lthough Petitioners' claims likely would be timely if filed anew in the district court, a transfer would expedite their review, thereby furthering the interest of justice."). Here, the parties have already filed appearances, and Transco has filed motions to intervene in the appeals, which motions were granted by this court. As such, the interest of justice requires the transfer of these appeals to the Third Circuit under 28 U.S.C. § 1631 to avoid the time, expense and effort of refiling the action.

## CONCLUSION

For the foregoing reasons, Respondent, Transcontinental Gas Pipe Line Company, LLC, respectfully asks this Court to transfer these appeals to the Third Circuit Court of Appeals since it is the circuit in which the facilities are located and authorized to be constructed pursuant to the NJDEP Permit which is the subject of these appeals.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*
CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

CERTIFICATE OF COMPLIANCE WITH F.R.A.P 27(d)

1. This motion complies with the formatting and page limit requirements of F.R.A.P. 27(d).

2. Pursuant to F.R.A.P. 27(d)(1)(E), this motion complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type-style requirements of F.R.A.P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14 Point Times New Roman.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*
CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

# CERTIFICATE OF ADMISSION TO THE BAR

I hereby certify that Christine A. Roy, Esq., attorney for Respondent, Transcontinental Gas Pipe Line Company, LLC, is a member in good standing of the bar of the United States Court of Appeals for the Second Circuit.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*
CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

MOTION CERTIFICATION

Pursuant to Second Circuit L.A.R. 27.1, counsel for Transco contacted counsel for Petitioners and Respondents regarding their clients' positions on this motion. Petitioners, Natural Resources Defense Council, Inc., et al., oppose the motion and intend responses. Respondent, the State of New Jersey Department of Environmental Protection, does not oppose the motion.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*
CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2025, I caused a copy of Transcontinental Gas Pipe Line Company, LLC's, Motion to Transfer Petitions for Review to the Third Circuit Court of Appeals, and the Declaration of Stephen Kellogg, to be served upon all counsel of record via CM/ECF.

Dated: December 3, 2025

Respectfully submitted,

By: *s/Christine A. Roy*
CHRISTINE A. ROY
RUTTER & ROY, LLP
2052 Route 35, Suite 103
Rivers Edge Professional Building
Wall, New Jersey 07719
(732) 462-1990
croy@rutterroy.com

*Attorneys for Respondent, Transcontinental Gas Pipe Line Company, LLC*

**CASE NOS. 25-2932(L), 25-2933 (Con)**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et.al.,<br><br>Petitioner,<br>v.<br><br>NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; SHAWN M. LATOURETTE, Commissioner of the New Jersey Department of Environmental Protection,<br><br>Respondents. | **DECLARATION OF STEPHEN KELLOGG IN SUPPORT OF MOTION TO TRANSFER** |

STEPHEN KELLOGG, of full age, hereby declares, pursuant to 28 U.S.C. §1746, as follows:

1. I am employed by Transcontinental Gas Pipe Line Company, LLC ("Transco" or the "Company") as its Project Manager for the Northeast Supply Enhancement Project ("Project") and have personal knowledge of the facts contained in this Declaration.

2. As Project Manager, I am highly involved with the implementation and planning for construction of the Project. In connection with the planning of the Project, I am familiar with the need for new pipeline capacity on Transco's pipeline system to meet customer demand and construction requirements, including

schedules for the construction of the physical facilities that are proposed. Further, I am generally familiar with the environmental permits, clearances, and approvals needed to begin and complete construction of the Project on a timely basis.

3. I make this Declaration in support of Transco's motion to transfer the Petitions for Review to the Third Circuit Court of Appeal by setting forth facts which establish that the permits being challenged in these consolidated appeals only authorize construction of Project facilities located in the State of New Jersey.

## BACKGROUND AND CERTIFICATION PROCESS

4. Transco is a natural gas company within the meaning of the Natural Gas Act[1], ("Natural Gas Act") and, as such, is regulated by the Federal Energy Regulatory Commission ("FERC") as to facilities, construction, rates, and types of service. Transco owns and operates an interstate natural gas transmission system that extends through the Southern and Atlantic Seaboard regions, terminating in the metropolitan New York City area.

5. The Project was designed to expand the natural gas delivery capacity of up to 400,000 dekatherms per day (Dth/d) of firm natural gas transportation capacity to Project customers National Grid: The Brooklyn Union Gas Company, d/b/a National Grid NY and KeySpan Gas East Corporation, d/b/a National Grid. Specifically, Brooklyn Union Gas will have expanded capacity of 211,300 Dth/d for

[1] 15 U.S.C., §717 et seq.

a term of 15 years, and KeySpan Gas East Corporation will have expanded capacity of 188,700 Dth/d for a term of 15 years.[2]

6. On March 27, 2017, Transco filed an application pursuant to section 7(c) of the Natural Gas Act[3], and Part 157 of the Commission's regulations[4] for authorization to construct and operate the Project.

7. On May 3, 2019, FERC issued, in its Docket No. CP17-101-000, a Certificate of Public Convenience and Necessity ("Certificate Order") authorizing Transco to construct, operate, and maintain the Project.

8. In addition to facilities in Pennsylvania and New York, the Certificate Order authorized Transco to construct and operate, among other things, the following facilities in New Jersey:

a. approximately 3.4 miles of 26-inch-diameter onshore pipeline loop in Middlesex County, New Jersey ("Madison Loop");

b. approximately 6.0 miles of 26-inch-diameter offshore pipeline loop in Middlesex and Monmouth Counties, New Jersey, ("Raritan Bay Loop")[5]; and

c. a new 32,000 hp compressor station consisting of two 16,000 hp natural gas-fired, turbine-driven compressor units in Somerset County, New Jersey ("Compressor Station 206").

[2] Both companies serve residential and commercial customers in the New York City area.
[3] 15 U.S.C. § 717f(c) (2012).
[4] 18 C.F.R. pt. 157 (2018).
[5] The offshore portion of the Raritan Bay Loop will also cross approximately 17.3 miles of New York State waters which was separately permitted by New York.

9. On January 31, 2020, Transco filed with FERC an application for an amendment to the Certificate to authorize the use of an alternate access road for Compressor Station 206 which was granted by FERC on July 16, 2020.

10. The Certificate Order's authorization was conditioned on Transco constructing and placing the project into service by May 3, 2021,[6] which was ultimately extended until May 3, 2024.

11. Since Transco could not obtain the federally delegated permits from New York and New Jersey, Transco on April 10, 2024, advised FERC that it would not seek further extension of the in-service date and would allow the Certificate to expire. On June 10, 2024, FERC issued an Order vacating the Certificate for the Project.

12. On May 29, 2025, Transco filed a petition with FERC for the expedited reissuance of the FERC Certificate, as amended, authorizing Transco to construct and operate the Project.

13. FERC issued an Order dated August 28, 2025 granting Transco's petition and reissued the Certificate for the Project as amended, subject to certain conditions.

[6] Certificate Order, 167 FERC ¶ 61,110 at ordering para. (B)(1).

THE PERMIT PERTAINS TO FACILITIES IN NEW JERSEY ONLY

14. On March 27, 2017, Transco submitted to NJDEP, among other applications, an application for a Water Quality Certification pursuant to Section 401 of the federal Clean Water Act ("401 WQC") for the Project. Transco withdrew and resubmitted the applications over a period of approximately two years. NJDEP denied the applications in 2019 and again in 2020.

15. On May 30, 2025, Transco submitted new permit applications to NJDEP, including, but not limited to, applications under the Clean Water Act and other federally delegated permits and state permits. On that same date, Transco applied to NJDEP for a minor source air permit for new Compressor Station 206 since the previous permit issued by NJDEP in 2017 expired.

16. Following a rigorous review process based on current available information and following a comprehensive evaluation of Transco's applications, NJDEP ultimately determined that the Project complies with applicable water quality standards upon appropriate conditions and issued to Transco a final 401 WQC and other federally delegated permits and state permits (collectively, the "Permit") for the Project effective November 7, 2025. A copy of the Permit is attached hereto as Exhibit A.

17. In addition to the final 401 WQC, the Permit included the following approvals: Coastal Wetlands Permit, Waterfront Development In-Water Individual

Permit, Waterfront Development Upland Individual Permit, Freshwater Wetlands Individual Permit, Verification-Method 5, and Flood Hazard Area Individual Permit-Utility. *See* Exhibit A.

18. The Permit authorized construction of those Project facilities located in New Jersey (only) within areas regulated by the NJDEP as shown on the approved plans. *See* Exhibit A.

19. The Permit does not authorize the construction of any Project facilities outside of New Jersey.

20. I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2025

DocuSigned by:
Stephen Kellogg
B9D91DC8F6294C0...

STEPHEN KELLOGG

# EXHIBIT A

**STATE OF NEW JERSEY**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**WATERSHED & LAND MANAGEMENT**
Mail Code 501-02A, P.O. Box 420, Trenton, New Jersey 08625-0420
Telephone: (609) 777-0454 or Fax: (609) 777-3656
dep.nj.gov/wlm/

# PERMIT

| In accordance with the laws and regulations of the State of New Jersey, the Department of Environmental Protection hereby grants this permit to perform the activities described below. This permit is revocable with due cause and is subject to the terms, conditions, and limitations listed below and on the attached pages. For the purpose of this document, "permit" means "approval, certification, registration, authorization, waiver, etc." Violation of any term, condition, or limitation of this permit is a violation of the implementing rules and may subject the permittee to enforcement action. | Approval Date<br>**November 7, 2025**<br>Expiration Date<br>**November 6, 2030** |
|---|---|

| **Permit Number(s):** | **Type of Approval(s):** | **Governing Rule(s):** |
|---|---|---|
| 0000-25-0012.1 LUP250001 | Coastal Wetlands Permit<br>WFD In-Water Individual Permit<br>WFD Upland Individual Permit<br>Freshwater Wetlands Individual Permit<br>Verification-Method 5<br>FHA Individual Permit-Utility<br>Water Quality Certificate | N.J.A.C. 7:13-1.1(b)<br>N.J.A.C. 7:7-1.1(a)<br>N.J.A.C. 7:7A-1.1(a) |

| **Permittee:** | **Site Location:** |
|---|---|
| Timothy Powell<br>Transcontinental Gas Pipeline Company,<br>2800 Post Oak Blvd<br>Houston, TX 77056 | Block(s) & Lot(s): [5.02, 23] [5.02, 25] [5.02, 26.01]<br>Municipality: Franklin Twp<br>County: Somerset<br>Raritan Bay, Transco Right-of-Way, Borough of Sayreville, Old Bridge Township, Middlesex County |

**Description of Authorized Activities:**

This document authorizes Transcontinental Gas Pipeline Company to construct the North East Supply Enhancement Project (NESE), to provide an additional 400,000 dekatherms per day of incremental firm transportation capacity from Transco's Station 195 in York County, Pennsylvania, to the existing Rockaway Delivery Point (located approximately three miles offshore of the Rockaway Peninsula in Queens Borough, New York). The approved project includes the construction of a new 32,000 horsepower Compressor Station in Franklin Township, Somerset County (Block 5.02, Lots 23, 25, and 26.01), the construction of 3.43 miles of new 26-inch-diameter pipeline, known as the Madison Loop located in the Borough of Sayreville and Old Bridge Township, Middlesex County, the construction of 0.16 miles of 26-inch-diameter pipeline, known as the Raritan Bay Loop (onshore) located southwest of the Morgan M&R Station in the Borough of Sayreville, Middlesex County, and the construction of 5.96 miles of 26-inch-diameter pipeline, known as the Raritan Bay Loop (offshore) located off the Sayreville shoreline to the Rockaway Transfer Point in Lower New York.

This approval includes a Water Quality Certification (WQC).

*The Department has determined that the herein approved activities meet the requirements of the (FHACA/CZM) rules. This approval does not obviate the local Floodplain Administrator's responsibility to ensure all development occurring within their community's Special Flood Hazard Area is compliant with the local Flood Damage Prevention Ordinance, and minimum NFIP standards, regardless of any state-issued permits. FEMA requires communities to review and permit all proposed construction or other development within their SFHA in order to participate in the NFIP.*

| **Prepared by:**<br><br>**Matthew Resnick** | **Received and/or Recorded by County Clerk:** |
|---|---|
| If the permittee undertakes any regulated activity, project, or development authorized under this permit, such action shall constitute the permittee's acceptance of the permit in its entirety as well as the permittee's agreement to abide by the requirements of the permit and all conditions therein. | |

**This permit is not valid unless authorizing signature appears on the last page.**

**STATEMENT OF AUTHORIZED IMPACTS:**

The authorized activities allow for the permittee to undertake impacts to regulated areas as described below. Additional impacts to regulated areas without prior Department approval shall constitute a violation of the rules under which this document is issued and may subject the permittee and/or property owner to enforcement action, pursuant to N.J.A.C. 7:13-24; N.J.A.C. 7:7-29; N.J.A.C. 7:7A-22.

| FWW Impacts | Permanent Disturbance (Acres) | Temporary Disturbance (Acres) |
|---|---|---|
| Freshwater wetlands | 1.064 | 2.796 |
| Transition areas | 1.325 | 5.085 |
| State open waters | 0 | 0.180 |

| Riparian Zone Vegetation | Area of riparian zone (Acres) |
|---|---|
| Permanent Disturbed | 1.6825 |
| Temporary Disturbed | 1.8431* |

*Temporary clearing, cutting or removal of riparian zone vegetation within actively disturbed areas pursuant to N.J.A.C. 7:13-11.2(f)3.

| Waterfront Development | Permanent Disturbance (Acres) | Temporary Disturbance (Acres) |
|---|---|---|
| Intertidal Subtidal Shallows | 0 | 0 |

| Coastal Wetlands-(not SFH/Duplex) | Permanent Disturbance (Acres) | Temporary Disturbance (Acres) |
|---|---|---|
| Coastal Wetlands | 0.165 | 1.369 |

**PRE-CONSTRUCTION CONDITIONS:**

1. The permittee shall obtain all applicable Federal, State, and local approvals prior to commencement of regulated activities authorized under a permit.

2. This permit is not valid until such time as you have obtained a Department of the Army authorization. You are advised to contact the Philadelphia District at 215-656-6728 if your project is located south of the Manasquan River or the New York District at 212-264-3912 if your project is located north of the Manasquan River.

3. Prior to the start of construction activities within the Raritan Bay, the United States Coast Guard (USCG) must be notified of work schedules and locations, and the Permittee shall receive any necessary approvals for the work from the USCG. Additionally, all local marine traffic must be notified via local newspapers and provided notice of construction activities within the bay.

4. Prior to that start of construction, the Permittee shall coordinate directly with the USFWS on a Section 7 consultation prior to construction, and adhere to any USFWS requirements that are required.

5. Within 30 days of permit issuance, and prior to starting construction, the Permittee shall contact Robert Clark, Bureau Manager of NJDEP Coastal and Land Use Compliance and Enforcement (CLUE), to develop a monitoring plan to ensure DLRP regulatory compliance during installation to avoid and/or immediately address any issues that may occur. The plan should be submitted for CLUE review and approval within 30 days of permit issuance and adhered to during construction.

6. Prior to the construction of any structures and/or the placement of fill within any tidelands areas authorized under this permit, the permittee must apply to the NJDEP's Bureau of Tidelands Management for a tidelands instrument (e.g., a license or lease) for the use and occupation of said tidelands. Tidelands staff will provide further guidance upon review for the timing of construction. All decisions concerning the issuance of any tidelands instrument is solely up to NJDEP's Bureau of Tidelands Management following the Tidelands Resource Council policy.

7. If a geodetic control reference marker is found on site and the position of the survey marker or monument cannot be protected, the applicant shall coordinate with the New Jersey Department of Transportation's Geodetic Survey and Survey Support Unit at least 60 days prior to disturbance to relocate the geodetic control marker to an appropriate location prior to construction. The impacted areas shall be restored to original grade and condition. The applicant shall contact NJGCS with any questions at (609) 963-1680.

8. Prior to site preparation, the permittee must obtain all necessary NJDEP Air Pollution Control Permits required for vehicle refueling operations, as per N.J.A.C. 7:27-8; and comply with all Air Pollution Control Rules under N.J.A.C. 7:27-1 to 34 as appropriate, during site preparation, equipment installation and operation.

9. Prior to site preparation or construction onsite, the permittee shall comply with all requirements of the Green Acres Program, including but not limited to the Green Acres procedures for a Diversion or Disposal of Green Acres encumbered Parkland under N.J.A.C. 7:36-26. No work shall occur without the required approvals for a disposal or diversion of parkland from the Office of Transactions and Public Land Administration, Public Land Compliance Section, and the State House Commission.

10. The proposed septic system, located at the compressor station site in Franklin Township, shall not exceed 2,000 gallons per day. If a septic system is designed to accept more than 2,000 gallons per day, the permittee shall be required to obtain a Water Quality Management Plan amendment.

11. All excess excavated material and construction debris shall be disposed of in a lawful manner offsite and outside of any regulated area or water, and in such a way as to not interfere with the positive drainage of the receiving area.

12. Prior to the commencement of site clearing, grading, or construction onsite, the permittee shall install a sediment barrier at the limits of disturbance authorized herein which is sufficient to prevent the sedimentation of the regulated waters and areas onsite and shall serve as a physical barrier protecting all regulated areas from encroachment by construction vehicles or other soil-disturbing activities. All sediment barriers and soil erosion control measures shall be kept in place and maintained throughout the duration of construction, until such time that the site is stabilized.

13. Timing: If this permit contains a condition that must be satisfied prior to the commencement of construction, the permittee shall comply with such condition(s) within the time required by the permit or, if no time specific requirement is imposed, then the permittee shall comply with such condition(s) within six months of the effective date of the permit, or provide evidence satisfactory to the Division that such condition(s) cannot be satisfied.

**CONSTRUCTION RELATED SPECIAL CONDITIONS:**

1. Drilling fluids and additives and grouts- All water used for any drilling in New Jersey must be of potable water quality. All drilling muds, additives, grouts, and hole stabilization materials must be certified for use in drinking water (NSF 60/61). All grouting materials must be on the listing of approved sealing materials in the New Jersey Well Construction and Maintenance; Sealing of Abandoned Wells Rule, at NJAC 7:9D-2.9.

3. Closure of Completed Horizontal Directional Drilling (HDD) Boreholes: The entrance and exit ends of the completed borehole containing either pipe or a cable installation must be grouted for a minimum distance of 250 feet from the entrance and exit point using an approved grout material.

4. 30 days prior to the start of HDD operations at the E I Dupont CEA (NJDEP Preferred ID# 008222), the permittee shall coordinate with the Licensed Site Remediation Professional (LSRP), who is overseeing the case to develop a plan to ensure that the HDD operation does not spread contamination laterally beyond the existing CEA footprint. Additionally, all contaminated drilling fluid and cuttings must be properly contained and disposed of in accordance with NJDEP's Hazardous Waste Regulations, N.J.A.C. 7:26G.

5. Abandoned Borehole- If a borehole must be abandoned, the HDD contractor shall follow the procedures outlined in Section 3, Sealing Abandoned HDD Boreholes of the "Revised Onshore Horizontal Directional Drill Contingency Plan, Northeast Supply Enhancement Project, Dated August 2017" (inclusive of the required modification noted below, to seal the entire length of the borehole). The borehole should be cleared the of any obstructions, if possible.

   i. The abandoned borehole should be sealed as outlined in Section 3 using approved materials identified in NJAC 7:9D-2.9.

   ii. The entire length of the borehole shall be sealed using a NJDEP approved grout or other acceptable method.

   iii. The Transco Madison Loop onshore and Raritan onshore-offshore HDD holes are located within unconsolidated Coastal Plain sediments, not consolidated rock, so the bore hole should be sealed as described in the second paragraph of the submitted document. In the event that drilling tools are lost downhole and there is no clear passage from entry to exit point the bore hole can be backfilled with cuttings to a point which is a distance 250 feet from the entry and exit points. The remainder of the hole on each side of the blockage shall be sealed with one of the state approved grouts identified above, to within 5 feet of the surface. If the grout used is not a cement-based grout then below the 5 foot soil layer there shall be a plug of neat cement or concrete 5 vertical feet in thickness. In areas where there grout may be in contact saline waters the bentonite grouts may not be used.

6. Prior to dredging, the permittee shall receive the following:

   a. All required local, state and federal approvals for the work;

   b. United States Army Corps of Engineering authorization for the project. A copy of said authorization shall be kept onsite; and

7. A construction report shall be completed and sent to the Office of Dredging and Sediment Technology 14 days prior to construction.

8. Upon completion of dredging a completion report shall be filled and sent to the Office of Dredging and Sediment Technology.

9. The permittee shall submit a water quality monitoring plan to the Department for review within 60 days of issuance of this permit. The turbidity plan must include three points of monitoring (one monitoring location within the operation, two monitoring locations outside of the operation) and a control point for dredging and jet trenching. Monitoring locations should be calculated based on the modeling analysis for the rate of operation. Turbidity monitoring shall include continual visual observation and recording of turbidity levels to ensure that operations are not causing any sediment plumes. Recording of turbidity levels shall be performed twice daily once on ebb tide and once on flood tide at four locations relative to placement operations.

10. Turbidity shall be monitored using a nephelometer, such as a Yellow Springs Instrument (YSI) 660 multi-parameter data logger or similar turbidity monitoring device and recorded in Nephelometric Turbidity Units (NTUs). Samples must be collected one foot below surface. The results of turbidity monitoring will be cataloged daily as part of the contractor's daily production report. This data must be made available to ODST within 24 hours of collection.

11. The permittee shall submit an Adaptive Management Plan (AMP) for this work. The AMP must consist of a course of action, some or all of which may be employed in any given situation that will reduce or mitigate the effects of observed increases in turbidity occurring due to filing operations on the project.

12. Between sediment sample locations VC208 (NJ State Plane Coordinates X: 559958.78 Y: 595597.64) and VC214 (NJ State Plane Coordinates X: 560767.04 Y: 596064.18), all dredging activities must operate at slack tide at a production rate of 4,800 cubic feet per hour.

13. Side casting of dredged material is prohibited.

14. All backfill must be sourced from clean material and/or over 90% sand.

15. Prior to backfilling the trenches, the permittee or contractor shall receive an approval from the New Jersey Department of Environmental Protection (NJDEP) and Army Corps of Engineers for sand mining within Ambrose Channel.

16. The Environmental Clamshell Bucket shall remain closed until it reaches near the bottom of the trench.

17. The pipeline must be buried to a sufficient depth to avoid exposure or hazard.

18. All trenches are limited to fifty-two feet (52') wide and eight (8') deep.

19. Any impediments to navigation shall be properly coordinated with the U.S. Coast Guard.

20. All sediments from this project shall be removed using a closed clamshell environment bucket.

21. The permittee shall employ the services of an independent dredging inspector to monitor dredging activities twice per week. The permittee shall submit the resume of the dredging inspector to the Department for review and receive written approval prior to the initiation of dredging.

22. The dredge shall be operated so as to control the rate of descent of the bucket so as to maximize the vertical cut of the clamshell bucket while not penetrating the sediment beyond the vertical dimension of the open bucket (i.e. overfilling the bucket). This will reduce the amount of free water in the dredged material, will avoid overfilling the bucket, and minimize the number of dredge bucket cycles needed to complete the dredging contract. The dredging contractor shall use appropriate software and sensors on the dredging equipment to ensure consistent compliance with this condition during the entire dredging operation. The independent dredging inspector shall monitor the operation of the software and sensors during the inspections as specified in the below conditions. Any malfunction of the software and sensors on the dredge at any time shall be immediately reported to the independent dredging inspector and the permittee by the dredging contractor and shall be immediately repaired to working order.

23. The closed clamshell environmental bucket shall be equipped with sensors to ensure complete closure of the bucket before lifting the bucket. Said sensors shall be operational during the entire dredging operation.

24. The closed clamshell environmental bucket shall be lifted slowly through the water, at a rate of 2 feet per second or less.

25. Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard.

26. The discharge (i.e. "overflow") of water from the barge/scow into which dredged material is placed is prohibited.

27. All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete.

28. The gunwales of the dredge scows shall not be rinsed or hosed during dredging except to the extent necessary to ensure the safety of workers maneuvering on the dredge scow.

29. All decant water holding scows shall be water tight and of solid hull construction.

30. Decant water from this project may only be discharged within the channel from where the sediments originated, in close proximity to the dredging contract area. Discharge to another receiving waterbody requires prior approval from the Department and may require a New Jersey Discharge Pollutant Elimination System/Discharge to Surface Water (NJDPES/DSW) permit.

31. All decant water shall be held in the decant holding scow a minimum of 24 hours after the last addition of water to the decant holding scow. Said water contained in the decant holding scow may only be discharge after this mandatory 24-hour retention time.

    a. Should the contractor wish to reduce the required holding time, the contractor shall demonstrate that the reduced holding time is sufficient to meet a total suspended solids (TSS) background value of 30 mg/L. This TSS action level is consistent with the ambient TSS results presented in the NY District study entitled "NY and NJ Harbor Deepening Project - Total Suspended Solids (TSS) Monitoring, Interim Report" (January 2006). The total suspended solids shall be determined through gravimetric analysis. No discharge shall be permitted from the decant holding scow until the results of the gravimetric analysis have confirmed that the 30 mg/L background level has been achieved. No additional water shall be added to the decant holding scow between the time of sample acquisition and discharge. Upon successful demonstration that the reduced holding time is sufficient to meet the TSS background level of 30 mg/L, the monitoring of TSS may be suspended and the demonstrated settling time shall replace the 24-hour minimum. A successful demonstration of the reduced holding time efficiency shall be determined once three consecutive TSS analyses have confirmed that the 30 mg/L action level has been achieved by the reduced holding time.

    b. Should the contractor wish to demonstrate this reduced holding time, all records including time of last addition of decant water into the scow, time of TSS sampling and the results of TSS sampling shall be submitted to the NJDEP as soon as they become available, together with a request for a reduced holding time.

32. During pumping of the decant water from the holding scow, great care shall be taken to avoid re-suspending or pumping sediment which has settled in the decant holding scow.

33. The dredging contractor shall complete and submit the attached Dewatering Form to the independent dredging inspector on a weekly basis as part of the Quality Control Report provided to the permittee. Said Dewatering Form shall be certified by the independent dredging inspector that they have witnessed the dewatering process during the preceding week. The permittee shall submit the completed Dewatering Form with appropriate certifications by email to the Office of Dredging and Sediment Technology for the preceding week.

34. The independent dredging inspector shall perform inspections of the dredging contract a minimum of twice per week using the attached WQC Field Inspector form. The permittee shall submit the completed inspection forms to the NJDEP on at least a weekly basis.

35. REPORTING REQUIREMENTS: During construction, the permittee shall submit copies of monthly/routine project update reports to DLRP. At the completion of the project, the permittee shall submit the following information to the Department. This information shall be submitted within three months of completion of dredging.

    - Start and finish date of work order(s)
    - Post-dredge hydrographic survey
    - Completed "Notice of Completion of Work" attached for each work order(s)/completion of project

36. The application proposes the placement and/or processing of dredged material at the following locations:

- Processing and temporary storage of dredge material at Bayshore Recycling (75 Crows Mill Road, Keasbey, NJ 08832)
- Placement at Bethlehem Landfill Site, in Bethlehem, Pennsylvania,
- Placement at the Tunnel Hill Reclamation Site (8822 Tunnel Hill Road, New Lexington, OH 043764) and WIN Waste Innovations of Seneca County LLC (12500 W. County Road 18, Fostoria, OH 44830),
- Placement at Pioneer Crossing Landfill (2650 Audubon Road, Audubon, PA 19403), and
- Placement at White Pines Landfill Corporation (515 State Route 442, Millville, PA 17846).

- The Department has reviewed the information presented in the AUD application, and the analytical results provided for the material for this project. Since the material will not be placed in New Jersey, this AUD is limited to the treatment and transport of the material based on the following conditions:

  a. Up to 178,171 cubic yards of Holocene material from this project shall be processed using a <u>minimum</u> of 8% Portland Cement at the designated processing facility consistent with the testing of the material as required by the upland placement site.

  b. The identified processing facility for material shall comply with all conditions imposed in the WFD/AUD and any subsequent modifications or renewals thereto for the dredged material processing facility.

  c. Final placement or processing of dredging material shall comply with all conditions in the following letters of acceptance:

     i. October 31, 2025 from Jennifer Solewski of Bayshore Recycling
     ii. October 6, 2025 from Jennifer M. Canone from Bethlehem Landfill
     iii. October 30, 2025 from Jeff Kopyta of Tunnel Hill Reclamation LLC and Win Waste Innovations of Seneca County LLC
     iv. October 29, 2025 from Mattew J. Mascaro of Pioneer Crossing Landfill
     v. October 29, 2025 from Matthew Mascaro of White Pines Landfill Corporation

37. Placement of material at the sites in Pennsylvania shall be addressed in separate authorizations and approvals issued by the Pennsylvania Department of Environmental Protection.

38. All trucks used to transport material to the above referenced placement sites shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

39. If the permittee elects to dispose/use the dredged material from this project at an alternate location, written authorization must be obtained from the Office of Dredging and Sediment Technology prior to the transport of any dredged material to said alternate disposal location. Any alternate disposal/use location must obtain all required state, local and federal permits before the Office would grant a modification of this permit to transport dredged material to the alternate location.

40. All activities shall conform to the Administrative Requirements for the Remediation of Contaminated Sites (N.J.A.C. 7:26C), including Subchapter 16 regarding Linear Development Projects, and the Technical Requirements for Site Remediation (N.J.A.C. 7:26E).

41. Material that will be used to backfill excavation areas must meet the clean fill standards as provided in NJDEP SRP *Fill Material Guidance for SRP Sites*, dated October 2021.

**THREATENED, ENDANGERED SPECIES AND FISHERIES SPECIAL CONDITIONS:**

1. In order to protect general warm water game fish species within the main stems and tributaries of the Carters Brook, Delaware & Raritan Canal, Tennant Brook, and Cheesequake Creek, no grading, construction or

clearing is permitted within any watercourse onsite between **May 1st and June 30**. Furthermore, any activity outside a watercourse, which would likely introduce sediment into the watercourse and/or increase its turbidity, is also prohibited during this period. Timing restrictions should be applied to "Intermittent" streams but would not be necessary on "Ephemeral" streams (Soil Conservation District BMPs would still apply). The Department reserves the right to suspend all regulated activities onsite should it be determined that the applicant has not taken proper precautions to ensure continuous compliance with this condition. If cofferdams or other water isolation measures are constructed prior to the timing restrictions stated above, construction within cofferdams may proceed during the restricted period(s).

2. In order to protect anadromous fish species, including shortnose and Atlantic sturgeon, within the Raritan Bay, Crossway Creek & Tributaries, and the Cheesequake Creek & Tributaries, no grading, construction or clearing is permitted within any watercourse onsite between **March 1st and June 30**. Furthermore, any activity outside a watercourse, which would likely introduce sediment into the watercourse and/or increase its turbidity, is also prohibited during this period. Timing restrictions should be applied to "Intermittent" streams but would not be necessary on "Ephemeral" streams (Soil Conservation District BMPs would still apply). The Department reserves the right to suspend all regulated activities onsite should it be determined that the applicant has not taken proper precautions to ensure continuous compliance with this condition. If cofferdams or other water isolation measures are constructed prior to the timing restrictions stated above, construction within cofferdams may proceed during the restricted period(s).

3. In order to preserve consistency across National Marine Fisheries Service (NMFS) and New York Department of Environmental Conservation (NYDEC) concerns, the New Jersey Division of Fish and Wildlife (NJDFW), Bureau of Marine Fisheries (MFA) modifies the standard "Time of year Restrictions" (TR) as described in the following table:

| **Species** | **Prohibited Work Time Restriction** | **Location** |
|---|---|---|
| Atlantic sturgeon (*Acipenser oxyrinchus oxyrinchus*) | 3/1 – 5/31 (Spring) & 11/1 – 11/30 (Autumn) | MP12.2 to MP14.0 [During the Spring timing restriction only] and MP30.0 to MP35.5 |
| River herring (*Alosa aestivalis* and *Alosa pseudoharengus*) | 3/1 – 5/31 | MP12.2 to MP14.0 |
| Winter flounder (*Pseudopleuronectes americanus*) | 12/15 – 5/31 | MP12.2 to 14.0 & MP26.5 to 30.6. This TOY restriction applies to waters shallower than -20 feet of the MLLW or within 500 feet of a -20-foot MLLW contour) |
| Blue crab (*Callinectes sapidus*) | TR no longer applied by MFA | Approximate MP30.0 (within 500 feet of Ambrose Channel) |

*Please note that Project locations are identified by Transco-assigned mileposts (MPs) along the Raritan Bay Loop route, rounded to the nearest tenth of a mile. The shore-crossing location in Morgan, New Jersey is at approximately MP 12.2. The Rockaway Delivery Lateral tie-in location in New York is at approximately MP 35.5

**Allowances:**

- Work (pile/platform installation) at the Morgan HDD Pit (MP12.5) shall be allowed beginning on 6/9. MFA requires that platform pile and goal post installations begin at the furthest MP from the shore, and to gradually work inland towards 12.0.

- Backfilling and reinstatement will be allowed between MP 29.5 and 30.4 from 12/1 - 12/10.

4. **Notification Requirements:**

Transco is required to notify crab fishermen 30 days in advance of operations within the Raritan Bay. MFA requires Transco to create a letter containing information on when and where construction work is going to take place in the Ambrose Channel and when the habitat is thought to be restored for fishermen to be able to harvest in these areas again for commercial blue crab potters/dredgers. Transco shall contact the Nacote Creek Research Station – Marine Fisheries for the names & addresses at 609-748-2020

Transco is required to notify commercial bait clam harvesters via direct notice (e.g., mailed letter) 30 days before beginning construction to allow commercial bait clam harvesters the opportunity to harvest the construction area before construction begins. Transco will need to contact the Nacote Creek Research Station – Shellfisheries for the names & addresses at 609-748-2021.

**In the area of the proposed Compressor Facility**

5. To reduce the risk of harm to Indiana Bat, Northern Long-eared Bat, and Tricolored Bat (proposed federal listing) and potential violation of the NJ Endangered and Nongame Species Conservation Act (ENSCA; N.J.S.A. 23:2a-1-13), and to reduce the risk of direct impacts to sensitive habitat, the Permittee shall adhere to a seasonal restriction on the clearing of all woody vegetation with a diameter of ≥3 inches at breast height vegetation from April 1 through September 30 of each calendar year.

6. Work shall not occur in ponded areas, especially within utility rights-of-way, from February 15 through July 31 of each calendar year. If work is proposed in ponded areas within this timeframe, the ponded area must be surveyed for vernal pool breeding activity by a qualified herpetologist with a Scientific Collection Permit and results of the survey must be submitted to the Endangered and Threatened Species Unit (via ETSU@dep.nj.gov) for review. No work shall commence until ETSU has reviewed the submitted survey and provided guidance.

**In the area of Madison Loop**

7. To reduce the risk of harm to Northern Long-eared Bat, Tricolored Bat (proposed federal listing), as well as nesting migratory bird species, and potential violation of the NJ Endangered and Nongame Species Conservation Act (ENSCA; N.J.S.A. 23:2a-1-13), and to reduce the risk of direct impacts to sensitive habitat, the Permittee shall adhere to a seasonal restriction on the clearing of all woody vegetation with a diameter of ≥3 inches at breast height from April 1 through September 30 of each calendar year.

**For areas west of Rt 9, the following condition shall apply**:

6. Work shall not occur in ponded areas, especially within utility rights-of-way, from February 15 through July 31 of each calendar year. If work is proposed in ponded areas within this timeframe, the ponded area must be surveyed for vernal pool breeding activity by a qualified herpetologist with a Scientific Collection Permit and results of the survey must be submitted to the Endangered and Threatened Species Unit (via ETSU@dep.nj.gov) for review. No work shall commence until ETSU has reviewed the submitted survey and provided guidance

**In the area of Raritan Bay Loop**

8. To reduce the risk of harm to Northern Long-eared Bat, Tricolored Bat (proposed federal listing), as well as nesting migratory bird species, and potential violation of the NJ Endangered and Nongame Species Conservation Act (ENSCA; N.J.S.A. 23:2a-1-13), and to reduce the risk of direct impacts to sensitive habitat, the Permittee shall adhere to a seasonal restriction on the clearing of all woody vegetation with a diameter of ≥3 inches at breast height from April 1 through September 30 of each calendar year.

9. To reduce the risk of harm to marine mammals, the permittee shall adhere to the requirements of the Incidental Harassment Authorization (IHA) permitted by NOAA on September 19, 2025, which outlines the required mitigation measures, monitoring requirements, and reporting protocols to minimize potential impacts to marine mammals. The MRA concurs with the measures being implemented to prevent harassment, including the use of PSOs, pre-start clearance, shutdown zones, soft starts, vessel speed reductions, and monitoring of sighting data

**SPECIAL CONDITIONS:**

1. This permit authorization includes the issuance of a water quality certificate to conduct activities in freshwater wetlands and/or State and tidal open waters.

2. This issued permit is subject to compliance with N.J.A.C. 7:7-27.2 <u>Conditions that apply to all coastal permits.</u>

3. The authorized activities shall comply with the applicable conditions set forth under N.J.A.C. 7:7A-9.3, 10, and 20.2. Failure to comply with these conditions shall constitute a violation of the Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 et. seq.). Any additional un-permitted disturbance of freshwater wetlands, State open waters, or transition areas besides that shown on the approved plans shall be considered a violation of the Freshwater Wetlands Protection Act rules unless the activity is exempt or a permit is obtained from the Department prior to the start of the disturbance.

4. The Department has determined that the freshwater wetlands affected by this permit authorization are of exceptional, intermediate, and ordinary resource value and the standard transition area or buffer required adjacent to the exceptional and intermediate resource value wetlands is 150 and 50 feet, respectively, and no standard transition area is required adjacent to the ordinary resource value wetlands. This authorization includes a limited transition area waiver, which allows encroachment only in that portion of the transition area determined by the Division to be necessary to access and accomplish the regulated activities. Any additional regulated activities conducted within the standard transition area onsite shall require a separate transition area waiver from the Division. Regulated activities within a transition area are defined at N.J.A.C. 7:7A-2.3. Please refer to the Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 et. seq.) and implementing rules (N.J.A.C. 7:7A) for additional information.

5. This authorization is valid for a term not to exceed five years from the date of this permit. If the permittee wishes to continue an activity covered by the permit after the expiration date of the permit, the permittee must apply for and obtain a permit extension or a new permit, prior to the permit's expiration.

6. Vegetation within the freshwater wetlands, freshwater wetlands transition area, coastal wetlands, and riparian zones onsite shall only be disturbed in the areas specifically shown on the approved drawings and upon completion of the project, all temporarily disturbed areas shall be replanted with native, non-invasive vegetation appropriate for the hydrologic conditions of the area.

7. Construction equipment shall not be stored, staged, or driven within any regulated areas onsite, unless expressly approved by this permit or described on the approved plans.

8. All excavated material must be disposed of in a lawful manner outside of any flood hazard area, riparian zone, open water, freshwater wetland, and adjacent transition area, and in such a way as to not interfere with the positive drainage of the receiving area.

9. The trench into which the utility line/stormwater conveyance structure is placed shall be no wider than necessary to comply with the United States Occupational Safety and Health Administration safety standards for excavations set forth at 29 CFR Par 1926, Subpart P.

10. Any excavation or temporary grading within freshwater wetlands, transition areas, or State open waters shall be backfilled to preexisting elevations where it is feasible to do so, and with the uppermost 18 inches backfilled with the original topsoil material. The permittee shall ensure that the backfilling activities do not interfere with the natural hydraulic characteristics of the freshwater wetlands, such as flow characteristics of the groundwater

onsite. The wetland and/or transition area above the excavation shall be replanted/restored with an appropriate indigenous species/an indigenous seed mix, as shown on the approved plan(s).

11. Any pipes laid through freshwater wetlands, transition areas, or State open waters which have been authorized by a Department permit shall be properly sealed to prevent leaking or infiltration and designed to not form a path for groundwater to be discharged or drained from a freshwater wetland. Pipes and backfilled materials shall be placed entirely beneath the preexisting ground elevation.

12. Access and construction staging areas through freshwater wetlands, transition areas, State open waters and riparian zones shall be no wider than what is shown on the approved plans.

13. The Department has determined that the onsite riparian zones along the regulated waterways are 50 and 150 feet, respectively, as shown on the approved plans. Therefore, vegetation within 50 and 150 feet from the respective top of banks of these watercourses shall only be disturbed in the areas specifically shown on the approved drawings. Upon completion of the project, all temporarily disturbed areas shall be restored with indigenous, non-invasive vegetation in accordance with N.J.A.C. 7:13-11.2(z).

14. In order to minimize turbidity downstream of the project area and to maintain the water quality of regulated waters within the project limits of disturbance, construction activities within the channel may only be performed in dry or dewatered conditions. Any water pumped during dewatering or hydrostatic testing shall be discharged outside of regulated areas through a properly sized filter bag, or to a well vegetated upland area, or into a Soil Conservation District approved settling basin. Inflow waters shall be diverted downstream to maintain stream flow. The diverted waters shall be free of sediment and the area around the pump shall be screened to prevent entrapment of fish and other aquatic organisms.

15. To ensure a continued ecological function of the forested wetlands to be cleared and converted to herbaceous wetlands, the Department requires that these areas be rough-graded where feasible to maintain micro-topography and existing hydrology.

16. All riparian zone vegetation that is cleared, cut, and/or removed to conduct a regulated activity, access an area where regulated activities will be conducted, or otherwise accommodate a regulated activity shall be replanted immediately after completion of the regulated activity, unless prevented by seasonal weather, in which case the vegetation shall be replanted as soon as conditions permit. Portions of the riparian zone occupied by an authorized structure need not be replanted. The vegetation to be replanted shall:

    i. Consist of vegetation of equal or greater ecological function and value as the vegetation that was cleared, cut, or removed. For example, herbaceous vegetation may be replaced with the same type of vegetation or with trees, but the trees in forested areas must be replaced with trees of equal or greater density and ecological function and value;

    ii. Consist of native, non-invasive vegetation, except in an actively disturbed area. In an actively disturbed area, the vegetation may be replaced with the same type of vegetation that was cleared, cut, or removed, or with another kind of vegetation typical of an actively disturbed area. For example, lawn grass may be replaced with garden plants or agricultural crops; and

    iii. In cases where replanting would interfere with continued access to or maintenance of a structure that is required by Federal, State, or local law, the vegetation replanted shall meet the requirements to the extent feasible.

17. This portion of the permit verifies the flood hazard area design flood elevation of 252.5 to 249.5 feet NAVD on block 5.02 lot 25 Franklin Township, Somerset County, New Jersey. This permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this project is located. Verified notice of this action shall be forwarded to the Division immediately thereafter. NOTE: The following information is to be submitted to the clerk for all Flood Hazard Area Verifications:

a. The Department file number for the verification;

b. The approval and expiration dates of the verification;

c. A metes and bounds description of any flood hazard area limit and/or floodway limit approved under the verification;

d. The flood hazard area design flood elevation, or range of elevations if variable, approved under the verification;

e. The width and location of any riparian zone approved under the verification; and

f. The following statement: "The State of New Jersey has determined that all or a portion of this lot lies in a flood hazard area. Certain activities in flood hazard areas are regulated by the New Jersey Department of Environmental Protection and some activities may be prohibited on this site or may first require a permit. Contact the Watershed and Land Management Program at (609) 777-0454 for more information prior to any construction onsite."

18. Prior to the start of any construction onsite, the permittee/owner shall record a deed notice for all stormwater management measures authorized under this permit which shall be recorded in the Office of the County Clerk or the registrar of deeds and mortgages of the county in which the development, project, project site, or mitigation area containing the stormwater management measure is located. A form of deed notice shall be submitted to the Watershed and Land Management Program (Program) for approval prior to filing. The deed notice shall contain a description of the stormwater management measure(s) used to meet the green infrastructure, groundwater recharge, stormwater runoff quality, and stormwater runoff quantity standards at N.J.A.C. 7:8-5.3, 5.4, 5.5, and 5.6 and shall identify the location of the stormwater management measure(s) in NAD 1983 State Plane New Jersey FIPS 2900 US Feet or Latitude and Longitude in decimal degrees. The deed notice shall also reference the maintenance plan required to be recorded upon the deed pursuant to N.J.A.C. 7:8-5.8(d). Prior to the commencement of construction, proof that the above required deed notice has been filed shall be submitted to the Program. Proof that the required information has been recorded on the deed shall be in the form of either a copy of the complete recorded document or a receipt from the clerk or other proof of recordation provided by the recording office. However, if the initial proof provided to the Program is not a copy of the complete recorded document, a copy of the complete recorded document shall be provided to the Program within 180 calendar days of the authorization granted by the Program.

19. Any new, reconstructed, enlarged, or elevated structure within a flood hazard area shall be secured to resist flotation, collapse, and displacement due to hydrostatic and hydrodynamic forces from floodwaters.

20. All temporary bridge crossings shall be removed within sixty days of their construction, unless the permittee can demonstrate the need to remain in place for a longer duration and can demonstrate that said temporary bridges shall not cause any offsite flooding impacts.

21. After all in-channel activities are completed, native stream bed material must be replaced within the channel. This material must be contoured to mimic the original physical characteristics of the channel (such as its shape, width, slope, thalweg, meander, and ratio of shallow areas to deep areas) in order to provide low-flow aquatic passage throughout the entire disturbed area.

22. The flood hazard area design flood elevation referenced in this verification was conservatively approximated using Method 5 at N.J.A.C. 7:13-3.5. The limits of the floodway cannot be determined using this method. As such, any future work that may possibly be located within the floodway onsite may be prohibited or restricted.

23. The applicant must adhere to the operations and maintenance plan for the stormwater management measures incorporated into the design of this major development in accordance with N.J.A.C. 7:8-5.8. Guidance set forth in the New Jersey Stormwater Best Management Practices Manual should be followed to the maximum extent practicable.

24. The Department has determined that this project meets the requirements of the Stormwater Management rules at N.J.A.C. 7:8. Any future expansion or alteration of the approved stormwater management system, which would affect water quality, increase the rate or volume of stormwater leaving the site, affect the infiltration capacity on the site, or alter the approved green infrastructure best management practices, shall be reviewed and approved by the Department by obtaining a modification or new permit as appropriate prior to construction. This includes any proposed changes to the discharge characteristics of any basin, the construction of new inlets or pipes that tie into the storm sewer network and/or the replacement of existing inlets or pipes with structures of different capacity.

25. Any future expansion or alteration of the approved site layout and/or land cover which would affect water quality, increase the rate or volume of stormwater leaving the site, or affect the infiltration capacity on the site, shall be reviewed and approved by the Department prior to construction.

**FRESHWATER WETLAND MITIGATION CONDITIONS:**

1. The permittee shall mitigate for the permanent disturbance of acres of **0.313 acres** of emergent wetlands and **0.751 acres** of forested wetlands through an on-site or off-site creation, restoration or enhancement project or with the purchase of credits from a mitigation bank serving the appropriate watershed management area in accordance with the mitigation hierarchy (N.J.A.C. 7:7A-11 et seq).

2. The permittee shall mitigate for the temporary disturbance to **0.180 acres** of State open waters, **2.796 acres** of emergent wetlands, and **0.007 acres** of scrub/shrub wetlands through an on-site restoration project (N.J.A.C. 7:7A-11 et seq).

3. **At least 90 days prior to the initiation of regulated activities authorized by this permit**, the permittee shall submit a mitigation proposal to the Division of Watershed Protection and Restoration for review and approval. Activities authorized by this permit shall not begin until the permittee has obtained written approval of a mitigation plan from the Department (N.J.A.C. 7:7A-11.6(a)).

4. **All mitigation for permanent impacts shall be conducted prior to or concurrent with the construction of the approved project** (N.J.A.C. 7:7A-11.3(a)). Concurrent means that at any given time, the mitigation must track at the same or greater percentage of completion as the project as a whole.

5. **All mitigation for temporary impacts shall be conducted immediately following completion of the activity that caused the disturbance** and shall be continued to completion within six months after the end of the activity that caused the disturbance.

6. If the permittee fails to perform mitigation for permanent impacts within the applicable time-period the acreage of mitigation required shall be increased by 20 percent each year after the date mitigation was to begin (N.J.A.C. 7:7A-11.3(c)).

7. If the permittee fails to perform mitigation for temporary impacts within the applicable time-period the activity shall be considered permanent, and mitigation shall be required to replace the affected resource (N.J.A.C. 7:7A-11.3(c)).

8. If the permittee is considering obtaining land to satisfy a mitigation requirement, the Department strongly recommends that the permittee obtain the Division's conceptual review and approval of any land being considered as a potential mitigation area.

9. If the permittee is purchasing credits from a mitigation bank to satisfy a mitigation requirement, prior to the initiation of regulated activities authorized by this permit, the permittee shall submit proof of purchase for 1.064 mitigation credits from an approved wetland mitigation bank to the attention of the Mitigation Unit Supervisor, NJDEP, Division of Watershed Protection and Restoration at Mail Code 501-02A, P.O. Box 420, Trenton, NJ 08625-0420.

At this time, the following bank(s) are approved to serve portions of the project area; additional banks may be approved at any time, so please contact the Mitigation unit for the most up to date service area information if you would like additional options.

For freshwater wetland impacts in portions of the project area located within Watershed Management Areas 9 and 10:

**Cranbury:** Contact: Doug Lashley, GreenVest, 4201 Northview Drive, Suite 202, Bowie, MD 20716 and he can be reached at (410) 987-5500 ext 102 or via email at Doug@greenvestus.com; or Brian Cramer, GreenVest, 3175 Route 10, Suite 100, Denville, NJ 07834 and he can be reached at (732) 902-6644 or via email at Brian@greenvestus.com

For freshwater wetland impacts in portions of the project area located within Watershed Management Area 12:

**Manasquan River:** Contact: Doug Lashley, GreenVest, 4201 Northview Drive, Suite 202, Bowie, MD 20716 and he can be reached at (410) 987-5500 ext 102 or via email at Doug@greenvestus.com; or Brian Cramer, GreenVest, 3175 Route 10, Suite 100, Denville, NJ 07834 and he can be reached at (732) 902-6644 or via email at Brian@greenvestus.com

**Marsh Bog Brook I:** Contact: Mark Renna, Evergreen Environmental, LLC, 709 Natures Way, Franklin Lakes, NJ 07417 and he can be reached at 201-644-7302 or 973-356-7164 or by email at mrenna@evergreenenv.com

10. If the permittee is considering conducting a creation, restoration or enhancement project, the following conditions shall apply:

    a. **Prior to the initiation of regulated activities** authorized by this permit the permittee shall submit a final design of the mitigation project for approval and include all of the items listed on the checklist entitled Checklist for Completeness: Creation, Restoration or Enhancement for a Freshwater Wetland Mitigation Proposal located at https://dep.nj.gov/wlm/forms/#mit.

    b. The permittee shall obtain a secured bond or other financial surety acceptable to the Division from a firm licensed to provide such services in New Jersey (N.J.A.C. 7:7A-11.17).

    c. **Prior to the completion of the mitigation project for permanent impacts**, the permittee shall complete, sign and file with the County Clerk (the Registrar of Deeds and Mortgages in some counties), a conservation restriction that meets the requirements of N.J.A.C. 7:7A-12.1. The conservation restriction shall include the wetland and required transition area and conform to the format and content of the Wetlands Mitigation Area model conservation restriction that is available at: https://dep.nj.gov/wlm/forms/#mdr. The applicant is required to include a metes and bounds description shown on a map. Within 180 days of the issuance of the mitigation approval, the recorded conservation restriction shall be provided to the Mitigation Unit, Division of Watershed Protection and Restoration for verification (N.J.A.C. 7:7A-12.1 et. seq.).

    d. The permittee shall notify the Mitigation Unit at the Division of Watershed Protection and Restoration in writing **at least 30 days prior to the start of construction of the wetland mitigation project** to arrange an on-site pre-construction meeting among the permittee, the contractor, the consultant and the Division.

    e. To ensure the intent of the mitigation design and its predicted wetland hydrology is realized in the landscape, the mitigation designer shall be present on-site during all critical stages of mitigation construction and during the restoration of any temporarily impacted areas. Critical stages of construction include but are not limited to herbicide applications, earthmoving activities, planting, and inspections.

f. The permittee shall be responsible for ensuring that best management practices are used throughout construction to control the spread and colonization of highly invasive plants. Specifically, all equipment, especially tracks and tires, must be thoroughly cleaned every time equipment or vehicles move from an area containing invasive plants or from off-site to the mitigation area. In addition, soil containing root fragments and above-ground vegetative material from invasive plants shall be carefully managed during earthmoving activities and disposed of at a suitable off-site location rather than mulched and reused or stockpiled elsewhere on the site.

g. If changes to the mitigation design are necessary to ensure success of the project as a result of on-site conditions, the mitigation designer shall immediately notify the Division in writing and submit an alternative plan which achieves the proposed wetland conditions. The Division shall review the plan in accordance with N.J.A.C. 7:7A-11.7. Any modifications to the plan that are reviewed and approved by the Division must be shown on a signed and sealed revised plan. The As-Built plans required as a part of the Construction Completion Report may serve as the signed and sealed revised plan required to be submitted as part of the construction modification process described above if time constraints warrant such action and have been approved by the Division in writing.

h. **Within 30 days of final grading of the mitigation site and prior to planting**, the permittee shall notify the Mitigation Unit at the Division of Watershed Protection and Restoration in writing to arrange a post-grading construction meeting among the permittee, contractor, consultant and the Division.

i. **Within 30 days following the final planting of the mitigation project**, the permittee shall submit a Construction Completion Report to the Division detailing as-built conditions (see below) and any changes to the approved mitigation plan that were made during construction (N.J.A.C. 7:7A-11.12). The Construction Completion Report shall contain, at a minimum, the following information:

   i. A completed Wetland Mitigation Project Completion of Construction Form. This form is located at https://dep.nj.gov/wlm/forms/#mit and certifies that the mitigation project has been constructed as designed and that the proposed area of wetland creation, restoration or enhancement has been accomplished;

   ii. As-Built plans which depict final grade elevations at one-foot contours and include a table of the species and quantities of vegetation that were planted including any grasses that may have been used for soil stabilization purposes; and

   iii. Photos of the constructed wetland mitigation project with a photo location map as well as the GPS waypoints in NJ state plane coordinates NAD 1983.

j. **Within 30 days following final planting of the mitigation project**, the permittee shall post the mitigation area with permanent signs which identify the site as a wetland mitigation project and that all-terrain vehicle use, motorbike use, mowing, dumping, draining, cutting and/or removal of plant materials is prohibited and that violators shall be prosecuted and fined to the fullest extent under the law. The signs must also state the name of the permittee, a contact name and phone number, and the Department's permit number.

k. The permittee shall monitor **all freshwater wetland and transition area projects** for a minimum of 5 years, unless otherwise stipulated within the approved mitigation proposal, beginning the first full growing season after the mitigation project has been completed. The permittee shall submit monitoring reports to the Division of Watershed Protection and Restoration no later than December 31st of each full monitoring year (N.J.A.C. 7:7A-11.12(g)). All monitoring reports must include the standard items identified in the checklist entitled, "Mitigation Monitoring Checklist", which can be found at https://dep.nj.gov/wlm/forms/#mit.

l. Once the required monitoring period has expired and the permittee has submitted the final monitoring report, the Division will make the finding that the mitigation project is either a success or a failure. This mitigation project will be considered successful if the permittee demonstrates all of the following:

   i. That the goals of the wetland mitigation project, including acreage and the required transition area, as stated in the approved wetland mitigation proposal and the permit have been satisfied. The permittee shall submit a field wetland delineation of the wetland mitigation project based on the <u>Federal Manual for Identifying and Delineating Jurisdictional Wetlands</u> (1989) which shows the exact acreage of State open waters, emergent, scrub/shrub and/or forested wetlands in the mitigation area;

   ii. The site has an 85 percent survival and 85 percent area coverage of the mitigation plantings or target hydrophytes, which are species native to the area and similar to ones identified on the mitigation planting plan. All plant species in the mitigation area must be healthy and thriving and all trees must be at least five feet in height;

   iii. The site has less than 10 percent coverage by invasive or noxious species.

   iv. The site contains hydric soils or there is evidence of reduction occurring in the soil; and,

   v. The proposed hydrologic regime as specified in the mitigation proposal has been satisfied.

m. The permittee is responsible for assuming all liability for any corrective work necessary to meet the success criteria established above (N.J.A.C. 7:7A-11.12(i)). The Division will notify the permittee in writing if the mitigation project is considered a failure. Within 30 days of notification, the permittee shall submit a revised mitigation plan to meet the success criteria identified above for Division review and approval. The financial surety, if required, will not be released by the Division until such time that the permittee satisfies the success criteria as stipulated above.

**<u>COASTAL MITIGATION PERMIT CONDITIONS:</u>**

1. The permittee shall mitigate for the temporary disturbance of **1.369 acres** of coastal wetlands through an on-site restoration project.

2. The permittee shall mitigate for the permanent disturbance of **0.165 acres** of coastal wetlands through an on-site or off-site creation, restoration, or enhancement project, or with the purchase of credits from a mitigation bank serving the appropriate watershed management area.

3. **At least 90 days prior to the initiation of regulated activities authorized by this permit**, the permittee shall submit a mitigation proposal to the Division of Watershed Protection and Restoration for review and approval. Activities authorized by this permit shall not begin until the permittee has obtained written approval of a mitigation plan from the Department.

4. All mitigation for temporary disturbance shall be conducted immediately following completion of the activity that caused the disturbance and shall be continued to completion, which shall not exceed six months after the cessation of the activity that caused the disturbance (N.J.A.C. 7:7-17.3).

5. All mitigation for permanent disturbance shall be conducted prior to or concurrent with the construction of the approved project (N.J.A.C. 7:7-17.3). Concurrent means that at any given time, the mitigation must track at the same or greater percentage of completion as the project as a whole.

6. If the permittee is considering obtaining land to satisfy a mitigation requirement, the Department strongly recommends that the permittee obtain the Division's conceptual review and approval of any land being considered as a potential mitigation area.

7. If the permittee is purchasing credits from a mitigation bank to satisfy a mitigation requirement, prior to the initiation of regulated activities authorized by this permit, the permittee shall submit proof of purchase for 0.165 mitigation credits from an approved wetland mitigation bank to the attention of the Mitigation Unit Supervisor, NJDEP, Division of Watershed Protection and Restoration at Mail Code 501-02A, P.O. Box 420, Trenton, NJ 08625-0420.

   As of the date of this permit, there are no mitigation banks with the appropriate credit type serving your project area. Additional banks may be approved at any time, so please contact the Mitigation Unit for the most up to date service area information if you would like additional options.

8. If the permittee is considering conducting a creation, restoration or enhancement project, the following conditions shall apply:

   a. **Prior to the initiation of regulated activities** authorized by this permit the permittee shall submit a final design of the mitigation project for approval and include all of the items listed on the checklist entitled Checklist for Completeness: Creation, Restoration or Enhancement for a Coastal Wetland Mitigation Proposal located at https://dep.nj.gov/wlm/forms/#mit.

   b. **Prior to the completion of the mitigation project**, the permittee shall complete, sign and file with the County Clerk (the Registrar of Deeds and Mortgages in some counties), a conservation restriction that meets the requirements of N.J.A.C. 7:7-18 for the mitigation area compensating for permanent disturbance. The conservation restriction shall include the wetland and required transition area and conform to the format and content of the Wetlands Mitigation Area model conservation restriction that is available at: https://dep.nj.gov/wlm/forms/#mit. The permittee is required to include a metes and bounds description shown on a map. Within 10 days of filing the conservation restriction, the permittee must send a copy of the conservation restriction to the Mitigation Unit, NJDEP Division of Watershed Protection and Restoration for verification (N.J.A.C. 7:17-18.2(b)).

   c. For onsite projects (for permanent and/or temporary disturbance), the permittee shall notify the Mitigation Unit at the Division of Watershed Protection and Restoration in writing **at least 30 days prior to the start of construction of the wetland mitigation project** to arrange an on-site pre-construction meeting among the permittee, the contractor, the consultant and the Division.

   d. To ensure the intent of the mitigation design and its predicted wetland hydrology is realized in the landscape, the mitigation designer shall be present on-site during all critical stages of mitigation construction and during the restoration of any temporarily impacted areas. Critical stages of construction include but are not limited to herbicide applications, earthmoving activities, planting, and inspections.

   e. The permittee shall be responsible for ensuring that best management practices are used throughout construction to control the spread and colonization of highly invasive plants. Specifically, all equipment, especially tracks and tires, must be thoroughly cleaned every time equipment or vehicles move from an area containing invasive plants or from off-site to the mitigation area. In addition, soil containing root fragments and above-ground vegetative material from invasive plants shall be carefully managed during earthmoving activities and disposed of at a suitable offsite location rather than mulched and reused or stockpiled elsewhere on the site.

   f. If changes to the mitigation design are necessary to ensure success of the project as a result of on-site conditions, the mitigation designer shall immediately notify the Division in writing and submit an alternative plan which achieves the proposed wetland conditions. Any modifications to the plan that are reviewed and approved by the Division must be shown on a signed and sealed revised plan. The As-Built plans required as a part of the Construction Completion Report may serve as the signed and sealed revised plan required to be submitted as part of the construction modification process described above if time constraints warrant such action and have been approved by the Division in writing.

g. **Within 30 days of final grading of the mitigation site and prior to planting**, the permittee shall notify the Mitigation Unit at the Division of Watershed Protection and Restoration in writing to arrange a post-grading construction meeting among the permittee, contractor, consultant and the Division.

h. **Within 60 days following the completion of the mitigation project**, the permittee shall submit a Construction Completion Report to the Division detailing as-built conditions (N.J.A.C. 7:7-17.13(d)). The Construction Completion Report shall contain, at a minimum, the following information:

1) A completed Wetland Mitigation Project Completion of Construction Form that certifies the mitigation project has been constructed as designed and that the proposed area of wetland creation, restoration or enhancement has been accomplished. This form is located at on the Division's website at: https://dep.nj.gov/wlm/forms/#mit.

2) An as-built plan of the completed mitigation area showing grading and any structures included in the approved mitigation proposal;

3) Photographs, both pre and post construction, of the intertidal and subtidal shallows mitigation project including a photo location map as well as the GPS waypoints in NJ state plane coordinates NAD 1983; and

4) Any changes to the approved mitigation plan that were made during construction and an explanation for the deviation(s).

j. **Within 30 days following final planting of the mitigation project**, the permittee shall post the mitigation area with permanent signs which identify the site as a wetland mitigation project and that all-terrain vehicle use, motorbike use, mowing, dumping, draining, cutting and/or removal of plant materials is prohibited and that violators shall be prosecuted and fined to the fullest extent under the law. The signs must also state the name of the permittee, a contact name and phone number, and the Department's permit number.

k. The permittee shall monitor the mitigation for 5 full growing seasons beginning the year after the mitigation project has been completed. The permittee shall submit monitoring reports to the Division of Watershed Protection and Restoration no later than December 31st of each full monitoring year (N.J.A.C. 7:7-17.13(f)). All monitoring reports must include the standard items identified in the checklists entitled Wetland Mitigation Monitoring Project Checklist and Tidal Wetland Mitigation Monitoring Checklist. The Wetland Mitigation Monitoring Project Checklist and Tidal Wetland Mitigation Monitoring Checklist are located at https://dep.nj.gov/wlm/forms/#mit.

l. Once the required monitoring period has expired and the permittee has submitted the final monitoring report, the Division will make the finding that the mitigation project is either a success or a failure. In accordance with N.J.A.C. 7:7-17.13(g), the mitigation project will be considered successful if the permittee demonstrates all of the following:

1) A completed Wetland Mitigation Project Completion of Construction Form that certifies the mitigation project has been constructed as designed and that the proposed area of wetland creation, restoration or enhancement has been accomplished. This form is located at on the Division's website at: https://dep.nj.gov/wlm/forms/#mit.

2) An as-built plan of the completed mitigation area showing grading and any structures included in the approved mitigation proposal;

3) Photographs, both pre and post-construction, of the tidal wetland mitigation project including a photo location map as well as the GPS waypoints in NJ state plane coordinates NAD 1983; and

m. The permittee is responsible for assuming all liability for any corrective work necessary to meet the success criteria established above (N.J.A.C. 7:7-17.13(h)). The Division will notify the permittee in writing if the

mitigation project is considered to be a failure. Within 30 days of notification, the permittee shall submit a revised mitigation plan to meet the success criteria identified above for Division review and approval. The financial surety, if required, will not be released by the Division until such time that the permittee satisfies the success criteria as stipulated above.

**RIPARIAN ZONE MITIGATION CONDITIONS:**

1. **At least 90 days prior to commencing regulated activities authorized by this permit**, the permittee shall submit a proposal to mitigate for the permanent loss of **0.761 acres** of forested riparian zone vegetation. The proposal shall be designed in accordance with the standards at N.J.A.C. 7:13-13. Activities authorized by this permit shall not begin until the permittee has obtained written approval of a mitigation plan from the Department (N.J.A.C. 7:13-13.2(b)).

2. **All mitigation shall be conducted prior to or concurrent with the regulated activity that causes the disturbance.** (N.J.A.C. 7:13-13.3(a)1). Concurrent means that at any given time, the mitigation must track at the same or greater percentage of completion as the project as a whole.

3. If the permittee is purchasing credits from a mitigation bank to satisfy a mitigation requirement, prior to the initiation of regulated activities authorized by this permit, the permittee shall submit proof of purchase for 0.761 mitigation credits from an approved riparian mitigation bank to the attention of the Mitigation Unit Supervisor, NJDEP, Division of Watershed Protection and Restoration at Mail Code 501-02A, P.O. Box 420, Trenton, NJ 08625-0420.

   At this time, the following bank(s) are approved to serve portions of the project area; additional banks may be approved at any time, so please contact the Mitigation unit for the most up to date service area information if you would like additional options.

   For riparian zone impacts in portions of the project area located within Watershed Management Area 10:

   **Cranbury:** Contact: Doug Lashley, GreenVest, 4201 Northview Drive, Suite 202, Bowie, MD 20716 and he can be reached at (410) 987-5500 ext 102 or via email at Doug@greenvestus.com; or Brian Cramer, GreenVest, 3175 Route 10, Suite 100, Denville, NJ 07834 and he can be reached at (732) 902-6644 or via email at Brian@greenvestus.com

   For riparian zone impacts in portions of the project area located within Watershed Management Area 12:

   **Marsh Bog Brook I:** Contact: Mark Renna, Evergreen Environmental, LLC, 709 Natures Way, Franklin Lakes, NJ 07417 and he can be reached at 201-644-7302 or 973-356-7164 or by email at mrenna@evergreenenv.com

4. If the permittee is considering conducting a creation, restoration or enhancement project, the following conditions shall apply:

   **Prior to the initiation of regulated activities authorized by this permit,** the permittee shall sign a Department approved conservation restriction to protect the mitigation area from future development that would remove the vegetation planted. (N.J.A.C. 7:13-13.2(g)). The conservation restriction shall conform to the format and content of the rules at N.J.A.C. 7:13-14 and the Riparian Zone Mitigation Area model located at Deed Restriction: Riparian Zone Compensation (nj.gov). The restriction shall be included on the deed and recorded in the office of the County Clerk (the Registrar of Deeds and Mortgages in some counties) in the county wherein the lands of the mitigation project are located. A metes and bounds description shown on a map must be included within the recorded conservation restriction. Within 10 days of filing the conservation restriction, the permittee must send a copy of the conservation restriction to the attention of the Mitigation Unit Supervisor, NJDEP, Division of Watershed Protection and Restoration at Mail Code 501-02A, P.O. Box 420, Trenton, NJ 08625-0420.

5. For creation and restoration projects, the permittee shall obtain a secured bond or other financial surety acceptable to the Division from a firm licensed to provide such services in New Jersey (N.J.A.C. 7:13-13.15).

6. The permittee shall monitor the riparian project for at least 5 years beginning the year after the riparian zone mitigation project has been completed (N.J.A.C. 7:13-13.12(c)). **The permittee shall submit monitoring reports to the Division of Watershed Protection and Restoration, no later than December 31st of each full monitoring year**.

    a. All monitoring reports except the final one should include the requirements and goals of the mitigation proposal and a detailed explanation of the ways in which the mitigation has or has not achieved progress toward those goals. If mitigation has not achieved progress, the report shall also include a list of corrective actions to be implemented and a timeline for completion.

    b. The final monitoring report must include documentation and data demonstrating that:

        i. The goals of the riparian zone mitigation as stated in the approved riparian zone mitigation proposal and the permit conditions have been satisfied.

        ii. At least 85 percent of the mitigation plantings have survived and that at least 85 percent of the mitigation area is established with native species similar to ones identified on the mitigation planting plan. All plant species in the mitigation area must be healthy and thriving. All trees must be at least 5 feet in height; and

        iii. The site is less than 10 percent occupied by invasive or noxious species; and

        iv. The conservation restriction for the mitigation site has been executed and recorded.

7. If the riparian mitigation project does not meet the success criteria established above the project shall be considered a failure and the permittee shall submit a revised riparian mitigation plan. The revised plan shall be submitted within 60 days of receipt of notification from the Division indicating the riparian mitigation project was a failure.

8. If the Division determines that the riparian zone mitigation project is not constructed in conformance with the approved plan, the permittee will be notified in writing by the Department and will have 60 days to submit a proposal to indicate how the project will be corrected.

9. For preservation projects, the application shall provide documentation showing that the proposed preservation area will fully compensate in accordance with N.J.A.C. 7:13-13.13 for the loss of functions and values caused by the disturbance.

**STANDARD CONDITIONS:**

1. The issuance of a permit shall in no way expose the State of New Jersey or the Department to liability for the sufficiency or correctness of the design of any construction or structure(s). Neither the State nor the Department shall, in any way, be liable for any loss of life or property that may occur by virtue of the activity or project conducted as authorized under a permit.

2. The issuance of a permit does not convey any property rights or any exclusive privilege.

3. The permittee shall obtain all applicable Federal, State, and local approvals prior to commencement of regulated activities authorized under a permit.

4. A permittee conducting an activity involving soil disturbance, the creation of drainage structures, or changes in natural contours shall obtain any required approvals from the Soil Conservation District or designee having jurisdiction over the site.

5. The permittee shall take all reasonable steps to prevent, minimize, or correct any adverse impact on the environment resulting from activities conducted pursuant to the permit, or from noncompliance with the permit.

6. The permittee shall immediately inform the Department of any unanticipated adverse effects on the environment not described in the application or in the conditions of the permit. The Department may, upon discovery of such unanticipated adverse effects, and upon the failure of the permittee to submit a report thereon, notify the permittee of its intent to suspend the permit.

7. The permittee shall immediately inform the Department by telephone at (877) 927-6337 (WARN DEP hotline) of any noncompliance that may endanger public health, safety, and welfare, or the environment. The permittee shall inform the Watershed & Land Management by telephone at (609) 777-0454 of any other noncompliance within two working days of the time the permittee becomes aware of the noncompliance, and in writing within five working days of the time the permittee becomes aware of the noncompliance. Such notice shall not, however, serve as a defense to enforcement action if the project is found to be in violation of this chapter. The written notice shall include:

   i. A description of the noncompliance and its cause;

   ii. The period of noncompliance, including exact dates and times;

   iii. If the noncompliance has not been corrected, the anticipated length of time it is expected to continue; and

   iv. The steps taken or planned to reduce, eliminate, and prevent recurrence of the noncompliance.

8. Any noncompliance with a permit constitutes a violation of this chapter and is grounds for enforcement action, as well as, in the appropriate case, suspension and/or termination of the permit.

9. It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the authorized activity in order to maintain compliance with the conditions of the permit.

10. The permittee shall employ appropriate measures to minimize noise where necessary during construction, as specified in N.J.S.A. 13:1G-1 et seq. and N.J.A.C. 7:29.

11. The issuance of a permit does not relinquish the State’s tidelands ownership or claim to any portion of the subject property or adjacent properties.

12. The issuance of a permit does not relinquish public rights to access and use tidal waterways and their shores.

13. The permittee shall allow an authorized representative of the Department, upon the presentation of credentials, to:

   i. Enter upon the permittee's premises where a regulated activity, project, or development is located or conducted, or where records must be kept under the conditions of the permit;

   ii. Have access to and copy, at reasonable times, any records that must be kept under the conditions of the permit;

   iii. Inspect, at reasonable times, any facilities, equipment, practices, or operations regulated or required under the permit. Failure to allow reasonable access under this paragraph shall be considered a violation of this chapter and subject the permittee to enforcement action; and

   iv. Sample or monitor at reasonable times, for the purposes of assuring compliance or as otherwise authorized by the Federal Act, by the Freshwater Wetlands Protection Act, or by any rule or order issued pursuant thereto, any substances or parameters at any location.

14. The permittee shall not cause or allow any unreasonable interference with the free flow of a regulated water by placing or dumping any materials, equipment, debris or structures within or adjacent to the channel while the regulated activity, project, or development is being undertaken. Upon completion of the regulated activity, project, or development, the permittee shall remove and dispose of in a lawful manner all excess materials, debris, equipment, and silt fences and other temporary soil erosion and sediment control devices from all regulated areas.

15. The permittee and its contractors and subcontractors shall comply with all conditions, site plans, and supporting documents approved by the permit.

16. All conditions, site plans, and supporting documents approved by a permit shall remain in full force and effect, so long as the regulated activity, project, or development, or any portion thereof, is in existence, unless the permit is modified pursuant to the rules governing the herein approved permits.

17. The permittee shall perform any mitigation required under the permit in accordance with the rules governing the herein approved permits.

18. If any condition or permit is determined to be legally unenforceable, modifications and additional conditions may be imposed by the Department as necessary to protect public health, safety, and welfare, or the environment.

19. Any permit condition that does not establish a specific timeframe within which the condition must be satisfied (for example, prior to commencement of construction) shall be satisfied within six months of the effective date of the permit.

20. A copy of the permit and all approved site plans and supporting documents shall be maintained at the site at all times and made available to Department representatives or their designated agents immediately upon request.

21. The permittee shall provide monitoring results to the Department at the intervals specified in the permit.

22. A permit shall be transferred to another person only in accordance with the rules governing the herein approved permits.

23. A permit can be modified, suspended, or terminated by the Department for cause.

24. The submittal of a request to modify a permit by the permittee, or a notification of planned changes or anticipated noncompliance, does not stay any condition of a permit.

25. Where the permittee becomes aware that it failed to submit any relevant facts in an application, or submitted incorrect information in an application or in any report to the Department, it shall promptly submit such facts or information.

26. The permittee shall submit email notification to the Bureau of Coastal & Land Use Compliance & Enforcement at CLU_tomsriver@dep.nj.gov at least 3 days prior to commencement of site preparation and/or regulated activities, whichever comes first. The notification shall include proof of completion of all pre-construction conditions, including proof of recording of permits, approved plans and/or conservation easements, if required. The permittee shall allow an authorized Bureau representative on the site to inspect to ensure compliance with this permit.

27. The permittee shall record the permit, including all conditions listed therein, with the Office of the County Clerk (the Registrar of Deeds and Mortgages, if applicable) of each county in which the site is located. The permit shall be recorded within 30 calendar days of receipt by the permittee, unless the permit authorizes activities within two or more counties, in which case the permit shall be recorded within 90 calendar days of receipt. Upon completion of all recording, a copy of the recorded permit shall be forwarded to Watershed &

Land Management through the DEP Online service. The uploaded documents will go directly into the Department's database, and staff will be notified that information has been received. The service can be found at: https://dep.nj.gov/wlm/eservices/lrp-eservices/.

**APPROVED PLAN(S):**

The drawing(s) hereby approved consist of fifty six (56) sheet(s) prepared by PS&S and AECOM as noted below, dated and last revised as noted below, and entitled:

"NJDEP LAND USE PERMIT PLANS FOR THE NORTHEST SUPPLY ENHANCEMENT PROJECT, COMPRESSOR STATION 206, BLOCKS 5.02, LOTS 25, 20 (FORMERLY 23) & 26.01, TOWNSHIP OF FRANKLIN, SOMERSET COUNTY, NEW JERSEY, TRANSCONTEINENTAL GAS PIPELINE COMPANY LLC, FRESHWATER WETLANDS AND FLOOD HAZARD AREA PLANS", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/27/25:

- "COVER SHEET", sheet No.1 of 8,
- "OVERALL SITE PLAN AND GENERAL NOTES", sheet No. 2 of 8,
- "WETLAND PERMIT PLAN", sheets No. 3 through 5 of 8,
- "ACCESS ROADWAY PROFILE", sheet No. 6 of 8,
- "CONSTRUCTION DETAILS", sheet No. 7 and 8 of 8,

And,

"NJDEP LAND USE PERMIT PLANS FOR THE NORTHEAST SUPPLY ENHANCEMENT PROJECT PROPOSED 26" MADISON LOOP, OLD BRIDGE TOWNSHIP & SAYREVILLE BOROUGH, MIDDLESEX COUNTY, NEW JERSEY, TRANSCONTINENTAL GAS PIPE LINE COMPANY LLC, FRESHWATER WETLANDS PERMIT PLANS", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/8/2:

- "COVER SHEET", sheet No.1 of 20,
- "WETLAND PERMIT PLAN", sheets No. 3 through 16, of 20,
- "CONSTRUCTION DETAILS", sheets No. 17 through 20.

And,

"NJDEP LAND USE PERMIT PLANS FOR THE NORTHEAST SUPPLY ENHANCEMENT PROJECT PROPOSED 26" MADISON LOOP, OLD BRIDGE TOWNSHIP & SAYREVILLE BOROUGH, MIDDLESEX COUNTY, NEW JERSEY, TRANSCONTINENTAL GAS PIPE LINE COMPANY LLC, FLOOD HAZARD AREA PERMIT PLANS", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/8/2:

- "COVER SHEET", sheet No.1 of 20,
- "RIPARIAN ZONE PLAN", sheets No. 3 through 16, of 20,

And,

"NJDEP LAND USE PERMIT PLANS FOR THE NORTHEAST SUPPLY ENHANCEMENT PROJECT PROPOSED 26" MADISON LOOP, OLD BRIDGE TOWNSHIP & SAYREVILLE BOROUGH, MIDDLESEX COUNTY, NEW JERSEY, TRANSCONTINENTAL GAS PIPE LINE COMPANY LLC, WATERFRONT DEVELOPMENT PERMIT PLANS", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/8/2:

- "COVER SHEET", sheet No.1 of 13,
- "WATERFRONT DEVELOPMEN PERMIT PLAN", sheets No. 3 through 9 of 13,

And,

"NORTHEAST SUPPLY ENHANCEMENT PROJECT PROPOSED 26" MADISON LOOP OLD BRIDGE TOWNSHIP & SAYERVILLE BOROUGH NIDDLESEX COUNTY, NEW JERSEY", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/8/25:

- "SUPPLEMENTAL STREAM CROSSINGS MP 8.61", sheet No. 1 of 8;
- "SUPPLEMENTAL STREAM CROSSINGS MP 8.76", sheet No. 2 of 8;
- "SUPPLEMENTAL STREAM CROSSINGS MP 8.76 ACCESS ROAD", sheet No. 3 of 8;
- "SUPPLIMENTAL STREAM CROSSINGS MP 9.26", sheet No. 5 of 8;
- "SUPPLIMENTAL STREAM CROSSINGS MP 10.05", sheet No. 6 of 8;

And,

"NJDEP LAND USE PERMIT PLANS FOR THE NORTHEAST SUPPLY ENHANCEMENT PROJECT, PROPOSED 26" RARITAN BAY LOOP (OFFSHORE), MIDDLESEX & MONMOUTH COUNTY, NEW JERSEY", prepared by Jason Schooling, P.E. of PS&S, dated 5/21/25, last revised 10/8/25:

- "COVER SHEET", Sheet 1 of 9,
- "WATERFRONT DEVELOPMENT PERMIT PLAN", Sheet 3 through 5 of 9,
- "CONSTRUCTION DETAILS", Sheet 6 through 9 of 9,

And,

"TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC. POST CONSTRUCTION STORMWATER MANAGEMENT PLAN NORTHEAST SUPPLY ENHANCEMENT PROJECT COMPRESSOR STATION NO. 206 – HIGGINS FARM ACCESS ROAD FRANKLIN TOWNSHIP, SOMERSET COUNTY, NJ", prepared by John Dromsky-Reed, P.E. of AECOM, dated January 15, 2020, last revised September 26, 2025, unless otherwise noted below;

- "POST CONSTRUCTION STORMWATER MANAGEMENT PLAN (SHEET 1 OF 3), sheet No. 5 of 15,
- "POST CONSTRUCTION STORMWATER MANAGEMENT PLAN (SHEET 2 OF 3), sheet No. 6 of 15, last revised 10/31/25,
- "POST CONSTRUCTION STORMWATER MANAGEMENT PLAN (SHEET 3 OF 3), sheet No. 7 of 15,
- "DETAILS (SHEET 1 OF 4)", sheet 11 of 15, last revised 10/31/25,
- "DETAILS (SHEET 2 OF 4)", sheet 12 of 15, last revised 10/31/25.

**APPEAL OF DECISION:**

Any person who is aggrieved by this decision may submit an adjudicatory hearing request within 30 calendar days after public notice of the decision is published in the DEP Bulletin (available at https://dep.nj.gov/bulletin/). If a person submits the hearing request after this time, the Department shall deny the request. The hearing request must include a completed copy of the Administrative Hearing Request Checklist (available at https://dep.nj.gov/wlm/forms/). A person requesting an adjudicatory hearing shall submit the original hearing request to: NJDEP Office of Administrative Hearings and Dispute Resolution, Attention: Adjudicatory Hearing Requests, Mail Code 401-07A, P.O. Box 420, 401 East State Street, 7th Floor, Trenton, NJ 08625-0420. Additionally, a copy of the hearing request shall be submitted to the Director of Watershed & Land Management at the address listed on page one of this permit. In addition to your hearing request, you may file a request with the Office of Dispute Resolution to engage in alternative dispute resolution. Please see https://dep.nj.gov/oahdr/ for more information on this process.

If you need clarification on any section of this permit or conditions, please contact Watershed & Land Management's Technical Support Call Center at (609) 777-0454.

Approved By:

Colleen Keller, Director
Division of Land Resource Protection

c: Municipal Clerk, Old Bridge Twp, Sayreville Borough, Franklin Township
Municipal Construction Official, Old Bridge Twp, Sayreville Borough, Franklin Township
Agent (original) – Kristy Cronin, Kirsty.Cronin@wsp.com